```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND
                                  *
RYAN WHEELER,                     *
                                  *
            Plaintiff,            *
                                  *
     v.                           *    Civil No. JFM 08-2361
                                  *
ANNE ARUNDEL COUNTY, et al.,      *
                                  *
            Defendants            *
                               *****
```

**MEMORANDUM**

Plaintiff Ryan Wheeler ("Wheeler") brings suit against Defendants City of Annapolis ("the City"), Detective Thomas S. Pellegrini ("Detective Pellegrini"), and Sergeant Jessica Hertik-Allen ("Sergeant Hertik") (collectively "Defendants") seeking monetary damages for alleged violation of civil rights under 42 U.S.C. § 1983, false arrest and false imprisonment, malicious prosecution, and violation of Article 24 of the Maryland Declaration of Rights.[1] Defendants have moved to dismiss Wheeler's claims or, in the alternative, for summary judgment. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6. Defendants' motion will be treated as a motion for summary judgment and, for the reasons stated below, will be granted in full.[2]

**I.**

The following facts are uncontroverted or set forth in the light most favorable to the

---

[1] I have previously dismissed Wheeler's claims against Anne Arundel County and other individual defendants. (Dkt. 30; Dkt. 42.)

[2] Several of plaintiff's claims may properly be dismissed but, for ease and convenience, I will, instead, grant summary judgment on behalf of defendants as to all claims.

plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). On October 12, 2006, Jamore Van Johnson ("Johnson") was shot and killed at 1145 Madison Street in Annapolis, Maryland. (Am. Compl. ¶¶ 13-14.) Detective Pellegrini of the Annapolis Police Department was assigned as the lead investigator. (Defs.' Mem. Supp. Mot. to Dismiss or Alternatively for Summ. J. ("Defs.' Mem.") 3.) He visited the scene and took statements from available witnesses. (Am. Compl. ¶ 23.) Sergeant Hertik, at the time a corporal in the Criminal Investigation Section, supervised the processing of evidence at the crime scene. Sergeant Hertik had no other involvement in the investigation until around February 2007, when she became lead investigator after Detective Pellegrini left the Department. (*Id.* 3-4; Am. Compl. ¶ 24.)

Based on witness statements, Detective Pellegrini identified two suspects. The first suspect was Keith Dion Brown ("Brown"), who had been in a physical altercation with Johnson approximately two days before the murder and who had threatened to kill Johnson. The second suspect, the shooter, was described by witnesses as a "very large, 'fat' black man." (Defs.' Mem. 4; Am. Compl. ¶ 25.) Detective Pellegrini obtained Brown's cell phone records, which showed several calls to Plaintiff Wheeler around the time of the murder. (*Id.*)

No forensic, ballistics, DNA, surveillance, or other evidence directly linked Wheeler to the shooting or the crime scene. (Am. Compl. ¶ 26.) One witness interviewed at the scene, Myron Pindell ("Pindell"), initially failed to implicate Wheeler in the murder and denied seeing anything related to the shooting. When questioned on October 17, 2006, Pindell provided a description of the shooter, but the description did not match Wheeler's appearance. (Am. Compl. ¶ 30.) Yet on October 31, 2006, Pindell identified Wheeler as the shooter in a photographic lineup. (Am. Compl. ¶ 28; Defs.' Mem. 4.) By this time, according to Wheeler,

2

Detective Pellegrini knew that other eyewitnesses, in addition to Pindell, had described the shooter as having physical characteristics inconsistent with those of Wheeler.  (*Id.* ¶ 34.)

Based on the photo identification by Pindell and the telephone records, and after review and approval by the Deputy State's Attorney, the case against Wheeler was presented to the Grand Jury on November 3, 2006.  (Defs.' Mem. 6*.*)  A November 17, 2006 search of Wheeler's home pursuant to a search warrant executed by Detective Pellegrini did not locate any evidence connecting Wheeler to the crime.  (*Id.* ¶¶ 36, 38.)  An arrest warrant was issued and Wheeler was arrested on November 18, 2006.  (Defs.' Mem. 6.)  On December 1, 2006, an indictment was issued against Wheeler for first degree murder, second degree murder, manslaughter, use of a handgun in a felony, and use of a handgun in the commission of a crime of violence.  (*Id.*)  On December 11, 2006, Wheeler was arraigned in the Circuit Court for Anne Arundel County and held without bail.  (*Id.* 7.)

In May 2007, Sergeant Hertik, who had by that time become lead investigator, interviewed Joshua Hatch.  (*Id.*)  Hatch had sent a letter to the State's Attorney's Office several months earlier claiming he witnessed the Johnson murder.  (*Id.*)  At the interview, Hatch identified Wheeler as the shooter in a photographic lineup.  (*Id.*)  Wheeler alleges that Hatch was trying to procure leniency in his own pending criminal case by providing false testimony against Wheeler, and that Sergeant Hertik knew or should have known this.  (Am. Compl. ¶ 51.)

In July and August 2007, Wheeler's attorney, Spencer Gordon,[3] sent a series of letters to the prosecutor assigned to Wheeler's case pointing out weaknesses in the case and listing alibi

---

[3] Wheeler was initially represented by another attorney.  Spencer Gordon entered his appearance on May 29, 2007.  (Defs.' Mem. 7.)

witnesses, which Defendants allege were never previously provided by Wheeler or his attorney. (Defs.' Mem. 7.) Wheeler claims Defendants were aware of the alibi witnesses, as well as several additional independent witnesses who provided descriptions of the shooter that were inconsistent with Wheeler's attributes, and that Defendants failed to properly investigate these witnesses and other available exculpatory evidence. (Am. Compl. ¶ 52.) Based on investigation and confirmation of the alibi witnesses, the State's Attorney decided to dismiss the charges against Wheeler. (Defs.' Mem. 8.) A *nolle prosse* was entered on September 28, 2007, and Wheeler was released from custody. (*Id.*) Wheeler had been incarcerated for approximately nine months. (Am. Compl. ¶ 56.)

## II.

A motion for summary judgment will be granted only if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If factual issues exist "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is not appropriate. *Id.* The burden rests with the moving party to show that there exists no genuine issue of material fact, and the facts alleged must be construed by the court in the light most favorable to the nonmoving party. *United States v. Diebold*, 369 U.S. 654, 655 (1962). However, on the issues on which the nonmoving party bears the burden of proof, he or she must confront the motion for summary judgment with evidence showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256. There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

### III.

### A.

Wheeler brings a claim under Section 1983 against all three defendants alleging violation of his civil rights. Section 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Wheeler alleges that he was unreasonably detained in violation of the Fourth Amendment; that he was deprived of his life and liberty without due process of law guaranteed by the Fifth Amendment, applicable to the states through the Fourteenth Amendment; that he was not permitted a trial by jury as guaranteed by the Sixth Amendment, applicable to the states through the Fourteenth Amendment; and that the City's policies, procedures, and customs allowed and facilitated the deprivation of his rights. (Am. Compl. ¶¶ 87-94.)

Sergeant Hertik and Detective Pellegrini seek dismissal on qualified immunity grounds. (Defs.' Mem. 10.) Defendants are entitled to qualified immunity unless the following two-prong test is satisfied by Plaintiff's Section 1983 claim: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (internal quotations and citations omitted). It is no longer necessary to address the two prongs of the analysis in this order. *Pearson v. Callahan*, 129 S. Ct. 808, 813 (2009). However, in this case, such order of

analysis is appropriate.

When analyzing a claim of qualified immunity, the court considers "whether the plaintiff has been deprived of a constitutional right. If the complaint shows that the plaintiff has not suffered such a deprivation, the defendant is entitled to dismissal of the claim under Rule 12(b)(6)." *Jenkins v. Medford*, 119 F.3d 1156, 1160 (4th Cir. 1997). Government officials performing discretionary functions, such as Sergeant Hertik and Detective Pellegrini in the investigation and arrest of Wheeler, are generally shielded from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," and such officers are not held personally liable. *Id.* at 641. As I find no violation of a federal statutory or constitutional right, I need not address the second prong of the analysis.

1. Detective Pellegrini

Wheeler alleges that he was indicted, arrested, and incarcerated without probable cause or due process. Wheeler primarily focuses his claim against Detective Pellegrini on Pellegrini's grand jury testimony, alleging that "Pellegrini lied under oath to procure an indictment and purposefully misled the Grand Jury." (Pl.'s Opp'n to Defs.' Mot. to Dismiss or Alternatively, for Summ. J. ("Pl.'s Opp'n") 16.)

Witnesses in judicial proceedings are entitled to absolute immunity from damages liability under § 1983 based on their testimony.[4] *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983)

---

[4] While Defendants do not mention absolute immunity in their memoranda, I find it applicable here and will dismiss this claim as to Detective Pellegrini on that basis.

(barring a claim for damages under Section 1983 by a convicted individual against a police officer for giving perjured testimony at his criminal trial); *see also Creed v. Wilson*, No. 1:06CV397, 2009 WL 211701, at *5 (M.D.N.C. Jan. 29, 2009) (unpublished slip op.) (dismissing plaintiff's claims and explaining that "[o]ther enforcement proceedings, such as contempt or criminal prosecution, are available to deter perjury in judicial proceedings, but absolute immunity from civil liability is afforded under law in the interest of securing the full cooperation and testimony of witnesses"); *Williams v. Wickensimer*, No. 9:08-2488-PMD-GCK, 2008 WL 4613941, at *4 (D.S.C. Oct. 14, 2008) (unpublished) ("[P]olice officers, as witnesses, have an absolute immunity in suits against them for money damages, even if they commit perjury."); *Collis v. United States*, 498 F. Supp. 2d 764, 771 (D. Md. 2007) ("[E]ven, assuming that, but for [FBI Special Agent] Smith's allegedly false statements, the grand jury would not have indicted [the plaintiff] . . . the Court concludes that [FBI Special Agent] Smith is entitled to absolute immunity."); *Caldwell v. Green*, 451 F. Supp. 2d 811, 819 (W.D. Va. 2006) ("Any constitutional rights violation based on [the officer defendant's] testimony before the grand jury [] fails as a matter of law."). Detective Pellegrini is entitled to absolute immunity from civil damages under Section 1983 based upon his grand jury testimony.

In addition to Wheeler's allegations regarding Detective Pellegrini's grand jury testimony, Wheeler also faults Detective Pellegrini for failing to determine the cell phone towers used by Wheeler's phone, which later provided evidence that Wheeler was at another location around the time of the murder. (Pl.'s Opp'n 5.) Wheeler further alleges that Pellegrini knew of varying descriptions of the shooter, yet included Wheeler's photograph in a photo lineup for Pindell's review and omitted the photograph of another possible suspect. (*Id.* 6-7.) None of

these claims made by Wheeler rise above the level of negligence, and are therefore insufficient to support Wheeler's constitutional claims. *See Daniels v. Williams*, 474 U.S. 327, 336 (1986) (finding allegations of negligence insufficient to support a Fourteenth Amendment claim); *Miller v. Prince George's County*, 475 F.3d 621, 628 (4th Cir. 2007) (finding, in the Fourth Amendment context, allegations of a police officer's negligence to be an insufficient basis for a constitutional violation).

2. Sergeant Hertik

Wheeler contends that when Sergeant Hertik took over the case from Detective Pellegrini, she made "little effort . . . to assemble additional evidence or to evaluate the quality and accuracy of the evidence assembled by Pellegrini" and she "participated in the preparation of a false statement by another witness in an effort to save the criminal case." (Pl.'s Opp'n 13, 16.) This claim is based primarily on the circumstances surrounding Joshua Hatch's identification of Wheeler as the shooter after Wheeler had been incarcerated for over five months. According to Sergeant Hertik, Hatch sent a letter to the State's Attorney's Office several months before he was interviewed on May 1, 2007. (Pl.'s Opp'n 14.) Wheeler contends this letter has never been provided to him or his counsel. Wheeler questions why Hatch was not interviewed sooner, and notes that Hatch was never mentioned as a potential witness by anyone else present at the scene. (*Id.*) Wheeler also questions the reliability of Hatch's claim that he saw the shooter pull a gun from his waist because Hatch was in fact on the phone in the dark near another building at the time of the shooting. (*Id.*) Wheeler alleges that Hatch and Wheeler were incarcerated in the same jail before the identification was made and that Hatch is a "chronic offender" who "has even been arrested for impersonating a police officer." (*Id.* 15.) Wheeler argues that Sergeant

8

Hertik knew or should have known that Hatch fabricated his testimony in an effort to receive leniency in a sentencing two months after he provided a written statement to Sergeant Hertik. (*Id.*)  However, the fact that Sergeant Hertik took a statement from a witness who volunteered such information does not support Wheeler's constitutional claims.  The statement of Hatch was obtained after Wheeler was arrested and indicted, and there is no evidence that the identification was relied upon to detain Wheeler.

Wheeler also alleges that Sergeant Hertik was aware of alibi witnesses, as well as witnesses who provided descriptions of the shooter inconsistent with Wheeler's appearance, and that the failure to investigate these witnesses while Wheeler was incarcerated was a violation of Wheeler's right to due process.  "In order to succeed on his claim of an unreasonable post-arrest investigation in violation of his Fourteenth Amendment rights, Plaintiff must assert facts that, at a minimum, demonstrate Defendants acted with deliberate or reckless intent."  *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995).  "Allegations that a police officer acted negligently do not state a claim for a Fourteenth Amendment violation actionable under 1983."  *Id.*  In *Romero*, the plaintiff brought a Section 1983 action claiming police officers violated his constitutional right to a reasonable post-arrest investigation.  *Id.*  The plaintiff in *Romero* was arrested for murder and imprisoned for approximately three months, during which time the police failed to contact the plaintiffs' alibi witnesses and failed to interview other witnesses who allegedly saw another man threaten and attempt to fight the murder victim hours before he was murdered.  *Id.* at 1479.  The Tenth Circuit reversed the district court's denial of qualified immunity to the officers and found that the conduct of the police was, at most, negligent and did not amount to a constitutional violation.  *Id.*

Similarly, in *Simmons v. McElveen*, a plaintiff who had been arrested by police and imprisoned for armed robbery of a store brought suit under Section 1983 against police officers alleging that their post-arrest investigation violated his constitutional rights. In the months after the plaintiff's arrest, the police failed to disclose exculpatory fingerprint evidence to the district attorney's office or to conduct a physical line-up and fingerprint comparison of plaintiff's fingerprints to those of another suspect. 846 F.2d 337, 338 (5th Cir. 1988). The plaintiff was ultimately released from custody eight months after his arrest when his attorney located a witness who exonerated the plaintiff and conclusively implicated the other suspect. *Id.* at 339. The plaintiff's lawsuit under Section 1983 claimed that the police officers' post-arrest investigation violated his constitutional rights, but the Fifth Circuit upheld the district court's grant of summary judgment to the officers because the officers' investigation, though imperfect, did not exceed the level of negligence. *Id.*

Here, Sergeant Hertik's conduct during the post-arrest investigation is comparable to the conduct of the officers in *Romero* and *Simmons*. Even if taken as true, Wheeler's allegations that Sergeant Hertik failed to investigate relevant leads or to interview alibi witnesses while Wheeler was incarcerated are insufficient to show a violation of Wheeler's constitutional rights. Because I find that the facts alleged by Wheeler do not show that Sergeant Hertik acted with deliberate or reckless intent during the post-arrest investigation of Wheeler, Wheeler's Section 1983 claim against Sergeant Hertik fails.

3. The City

Wheeler argues that "the City has allowed its police officers and detectives to repeatedly violate the rights of criminal defendants, particularly African Americans, by fabricating

10

information before the Grand Juries, using questionable practices with photo line-ups, and procuring false witnesses." (Pl.'s Opp'n 17.) Wheeler contends that the City provided officers with unfettered discretion and uncontrolled authority in arrests and investigations, which allowed officers to pursue criminal prosecutions of innocent individuals. (Am. Compl. ¶ 94.) Wheeler also contends that the City had knowledge of the officers' conduct and deliberately ignored it. (Pl.'s Opp'n 17.) The City contests these allegations and states that Wheeler has not and cannot identify facts to support a specific policy, practice, or custom of the City that caused a violation of his constitutional rights. (Defs.' Mem. 18.)

A plaintiff seeking to impose liability under Section 1983 must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *Franklin v. Montgomery County, Md*, No. DKC 2005-0489, 2006 WL 2632298, at *15 (D. Md. Sept. 13, 2006) (unpublished) ("The threshold issue in any *Monell* claim is whether a constitutional violation occurred."). Wheeler fails to allege any facts that could establish a policy, practice, or custom of the City that proximately caused a violation of Wheeler's constitutional rights. Wheeler bases this claim primarily on the actions of the two officer defendants, and, as discussed above, Wheeler's constitutional rights were not violated by their actions. Wheeler's generalized allegations of customs in the police department do not state a claim because the alleged constitutional violation

must be incurred by this plaintiff. I therefore find no municipal liability.[5]

**B.**

Under Maryland law, the elements of false arrest and false imprisonment are: "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). Because the elements of a false imprisonment claim in Maryland are the same as those for a claim of false arrest, *see De Ventura v. Keith*, 169 F. Supp. 2d 390, 398 (D. Md. 2001) (*citing Okwa v. Harper*, 757 A.2d 118 (Md. 2000)), I will examine these claims together. Defendants move for dismissal of Wheeler's claims of false arrest and false imprisonment, arguing that Wheeler's notice was untimely under Maryland's Local Government Tort Claim Act ("LGTCA") and the arrest of Wheeler was made pursuant to a warrant.

Section 5-304 of the LGTCA states that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). "The notice shall be in writing and shall state the time, place, and cause of the injury." *Id.* § 5-304(c)(3). For purposes of the LGTCA, "the injury" occurs when the cause of action arises, which is "when facts exist to support each element" of the claim. *Heron*, 761 A.2d at 59

---

[5] The same reasoning applies to Wheeler's claims against Detective Pellegrini and Sergeant Hertik in their official capacities.
> While personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent and in essence are suits against the entity.

*Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (internal quotations and citations omitted). Wheeler's claims against the officers in their official capacities are therefore dismissed.

(internal quotations omitted).  Substantial compliance with the notice requirement of the LGTCA may suffice where the purpose of the requirement is fulfilled.  *Williams v. Maynard*, 754 A.2d 379, 385 (Md. 2000).

Wheeler's cause of action for false arrest and false imprisonment arose on the date of his release, September 28, 2007.  *See Heron*, 761 A.2d at 58-60.  Wheeler sent notice of his claims on March 24, 2008, within the 180 day notice requirement of the LGTCA.  (Pl.'s Opp'n 18.)

However, "a police officer carrying out [] an arrest under warrant . . . is not liable for false imprisonment in connection with that arrest if the officer had legal authority to arrest under the circumstances."  *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995) (*citing Ashton v. Brown*, 660 A.2d 447 (Md. 1995)); *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process."); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 182 (4th Cir. 1996) ("[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution."); *Meadows v. Feldman*, No. 7:03-CV-00101-SGW, 2003 WL 24180193, at *3 (W.D. Va. Dec. 16, 2003) (unpublished) ("To the extent that Meadows alleges that Call arrested him for driving with a suspended license pursuant to a warrant not supported by probable cause, the court treats Meadows' false arrest claim as a malicious prosecution claim founded on a Fourth Amendment seizure.").  Because Wheeler was arrested pursuant to a warrant, these allegations are more properly construed as a claim for malicious prosecution.  Accordingly, Wheeler's claims alleging false arrest and false

13

imprisonment are dismissed.

## C.

Wheeler's cause of action for malicious prosecution arose when the *nolle prosse* was entered on September 28, 2007. As with the false arrest and false imprisonment claims, Wheeler's notice sent on March 24, 2008 was within the LGTCA's 180 day limit.

The elements of malicious prosecution under Maryland law are: "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff." *Heron*, 761 A.2d at 59. It is undisputed that the first and fourth elements have been met.

Wheeler's claim fails on the second element, as the record reveals that Defendants had probable cause to arrest Wheeler. Under Maryland law, probable cause exists when there is "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." *Banks v. Montgomery Ward & Co., Inc.*, 128 A.2d 600, 604 (Md. 1957). "The existence of probable cause to arrest [Wheeler] provides [Defendants] with a complete defense to malicious prosecution." *Silvera v. Home Depot U.S.A., Inc.*, 189 F. Supp. 2d 304, 311 (D. Md. 2002).

Detective Pellegrini, lead officer prior to and at the time of Wheeler's arrest, identified Keith Brown as a suspect and obtained his cell phone records, which showed several calls to Wheeler around the time of the murder. Detective Pellegrini then presented several photographic lineups to an eyewitness, Myron Pindell, who identified Wheeler as the shooter and signed a statement acknowledging that he witnessed the murder. The phone records and the

14

witness identification of Wheeler were sufficiently strong to warrant Detective Pellegrini's belief that Wheeler had committed the murder.  The fact that Pindell, when interviewed the night of the murder, initially stated that the shooter was a black male but was unable to provide further description does not show a lack of probable cause.  As stated by Detective Pellegrini,

> Based on my experience and training in homicide investigations, it is not uncommon for an individual who has witnessed a murder not to say much at the scene with other individuals and residents present because of a fear for their safety or safety of their family [or] retribution for cooperating with the police or that such information could make [its] way back to the individuals involved in the murder.  Thus, I did not find Mr. Pindell's subsequent photo identification of Mr. Wheeler inconsistent or untrustworthy.

(Defs.' Mem. Ex. A, Pellegrini Aff. ¶ 10.)  Nor does the fact that some witnesses provided descriptions of the shooter inconsistent with Wheeler's appearance show a lack of probable cause, in light of the fact that Pindell identified the photograph of Wheeler as the shooter and in light of the phone records linking Wheeler to Brown on the night of the murder.  *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) ("In assessing whether probable cause exists, [the court] must examine the totality of the circumstances."); *see also Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) (*quoting Krause v. Bennett*, 887 F.2d 362, 371 (2d. Cir. 1989)) ("'Probable cause does not require an officer to be certain that the subsequent prosecution of the arrestee will be successful.'").  Because Wheeler has failed to establish a lack of probable cause, summary judgment is granted in favor of Defendants.

## D.

Defendants argue that Wheeler's claim brought under Article 24 of the Maryland Declaration of Rights should be dismissed on statutory immunity grounds and because Wheeler has failed to show any due process violation.  Article 24 protects substantive due process rights

15

and is generally construed *in pari materia* with the Fourteenth Amendment of the United States Constitution.  *Canaj, Inc. v. Baker and Div. Phase III*, 893 A.2d 1067, 1097 (Md. 2006).  To state a claim under Article 24, a plaintiff must establish "(1) [t]he defendant-officer engaged in activity that violated one of the plaintiff's Maryland constitutional rights, and (2) [t]he defendant-officer engaged in such activity with actual malice toward the plaintiff."  *Davis v. DiPino*, 99 Md. App. 282, 289, 637 A.2d 475 (Md. Ct. Spec. App. 1994), *rev'd on other grounds*, 655 A.2d 401 (Md. 1995).  As discussed above, I find no violation by Defendants of Wheeler's constitutional right to due process.  For the same reasons his Fourteenth Amendment claim fails, Wheeler's Article 24 claim also fails.

A separate order effecting the rulings made in this memorandum is being entered herewith.

Date: September 8, 2009

/s/
J. Frederick Motz
United States District Judge